IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.  1:14-cv-72-MR-DLH

| | |
|---|---|
| NICHOLAS C.,  by his guardian and next friend EMILY C.,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>ALDONA WOS, in her official capacity as Secretary of the Department of Health and Human Services; and ARTHUR ROBARGE, in his official capacity as Director of J. Iverson Riddle Developmental Center,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)　FIRST AMENDED COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

## INTRODUCTION

1.　　Plaintiff Nicholas C. (hereinafter "Nicholas"), by his guardian and next friend Emily C., brings this suit to challenge the infringement of his liberty due to the use of excessive and unnecessary physical restraint.

2.　　Nicholas files this First Amended Complaint due to the voluntary dismissal of claims originally filed by a second plaintiff.  No Answer or other responsive pleading has yet been filed and, pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff files this First Amended Complaint as of right.

3.      Nicholas is a patient at J. Iverson Riddle Developmental Center.  This facility is a State-operated healthcare facility operated by the North Carolina Department of Health and Human Services (hereinafter "DHHS").

4.      Since November 2013, Plaintiff has been subjected to the prolonged, routine and excessive use of mechanical restraint; the use of mechanical restraint for behavior that is not dangerous; and the use of mechanical restraint that is otherwise in violation of his rights secured by the Fourteenth Amendment to the United States Constitution and by State and federal law.

5.      Plaintiff sustained physical and psychological injuries, and is at risk of additional future injuries, as a result of the application of mechanical restraints to his body.

6.      Defendants Wos and Robarge each knew, or should have known, that Plaintiff was subjected to illegal, excessive and unnecessary physical restraint, and that Plaintiff sustained injuries as a result.  Defendants failed to intervene to prevent the violation of Plaintiff's clearly established right to be free from undue bodily restraint pursuant to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and other State and federal laws and regulations.

7.      Plaintiff seeks a declaration of his rights and prospective, permanent injunctive relief to halt the excessive and illegal use of physical restraint on his

2

body.  Plaintiff asks the Court for injunctive relief in order to prevent additional injuries resulting from the excessive and illegal use of physical restraint.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff's claim is made pursuant to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  This Court is granted original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution.  Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

9.     Venue is appropriate in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because Defendant Robarge may be found here.  28 U.S.C. § 1391(b)(2).

## PARTIES

10.     Plaintiff Nicholas C. is 22-year-old man who is a resident of Gaston County, North Carolina.  Nicholas has autism and an intellectual disability. He appears in this proceeding through his mother and duly-appointed guardian, Emily C.  Nicholas is currently a patient at J. Iverson Riddle Developmental Center (hereinafter "JIRDC"), a State-operated Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID) in Morganton, North Carolina.

11.     Defendant Aldona Wos (hereinafter "Wos") is the Secretary of the North Carolina Department of Health and Human Services.  DHHS is the State agency responsible for providing public mental health, developmental disability and substance abuse services for individuals who have disabilities.  N.C. Gen. Stat. § 122C-112.1.  As part of that responsibility, DHHS oversees fourteen facilities, including JIRDC.  § 122C-111.  Defendant Wos is charged with overall responsibility for the administration of DHHS.  Defendant Wos has policy-making authority over the use of restraint in State-operated healthcare facilities.  She is sued in her official capacity.

12.     Defendant Arthur Robarge (hereinafter "Robarge") is the Director of J. Iverson Riddle Developmental Center (JIRDC), a State-operated Intermediate Care Facility for Individuals with Intellectual Disabilities.  Defendant Robarge is charged with ensuring that JIRDC provides services in accordance with State and federal law.  See, e.g., 10A N.C. Admin. Code 28B.0401; 28C.0104(b); 28D.0102. Defendant Robarge has the authority to prohibit the use of particular restraint methods in JIRDC.  10A N.C. Admin. Code 28D.0201(d).  He is sued in his official capacity.

## FACTUAL ALLEGATIONS

13.     Plaintiff Nicholas is a 22-year-old man with autism and an intellectual disability whose need for a structured environment and services to manage his

4

aggressive behaviors resulted in placement in JIRDC in September 2010. JIRDC and DHHS have been responsible for his care and treatment since his admission.

14. On November 1, 2013, JIRDC staff held a meeting to discuss Plaintiff Nicholas's behavior support plan. According to the November 1, 2013, Mini Team Meeting notes, staff determined that "it would be in his [Nicholas's] best interest to change his support plan to include contingent mechanical restraint." The mechanical restraint employed, known as an "ambulatory restraint," consists of a leather belt with two attached leather wrist cuffs. The wrist cuffs lock and unlock with the use of a key. The restraint restricts the range of motion of an individual's arms. Picture of an individual in ambulatory restraint, Exh. 1.

15. On November 6, 2013, JIRDC staff held a meeting and noted in the November 6, 2013, Mini Team Meeting notes that Nicholas "has exhibited some aggressive behavior towards staff which has resulted in the application of his mechanical restraint."

16. On November 18, 2013, the JIRDC Human Rights Committee approved a behavior plan, including the use of mechanical restraint, presented by JIRDC staff to the Committee. According to the behavior plan, the belt portion of the restraint would be attached at Nicholas's waist at all times while he is out of bed. In accordance with the behavior plan, staff placed Nicholas in the wrist cuffs in the event he displayed aggressive behaviors.

5

17.    On November 19, 2013, JIRDC and DHHS representatives were notified by Disability Rights North Carolina, the state's Protection and Advocacy system,[1] of concerns that use of this mechanical restraint on Nicholas as planned by JIRDC staff violated his rights.

18.    From November 2013 through early April 2014, Nicholas remained in the belt portion of the restraint at all times while awake.  Nicholas was also forced to shower in the restraint.

19.    For 27 days during the months of November 2013 and December 2013, Nicholas was forced to sleep in the belt portion of the restraint as well.  From November 27, 2013 through December 9, 2013, Nicholas was forced to remain in the belt portion of restraint, 24 hours per day, for 13 consecutive days.

20.    On February 24, 2014, JIRDC staff presented a behavior plan addendum to Nicholas's mother for approval.  The plan required Nicholas to earn his way out of the mechanical restraint.  The plan indicated that the belt portion of the restraint would be removed when JIRDC staff members determined (a) the cuffs had not been applied for aggression for 30 consecutive days, (b) Nicholas was not assessed

---

[1] On July 1, 2007, then-Governor Michael Easley designated Disability Rights North Carolina as the federally-mandated Protection and Advocacy system for the state of North Carolina pursuant to 29 U.S.C. § 794e (Protection and Advocacy of Individual Rights Program, (the PAIR Act)); 42 U.S.C. §§ 10801 et seq. (Protection and Advocacy for Individuals with Mental Illness Act (the PAIMI Act)); and 42 U.S.C. §§ 15001 et seq. (Developmental Disabilities Assistance Bill of Rights Act (the DD Act)).

to be in pain, and (c) Nicholas had slept at least 4.5 hours per night for the previous two weeks.

21.     On April 2, 2014, JIRDC staff presented a new behavior plan to Nicholas's mother for approval.  The plan relies on seclusion and manual restraint to address Nicholas's undesirable behaviors.  As the plan does not include the use of mechanical restraint, Nicholas's mother consented to the plan.

22.     Although the new plan does not include the planned use of mechanical restraint, JIRDC staff and Defendants Robarge and Wos have not foreclosed the possibility that mechanical restraint will be employed on Nicholas again.

23.     JIRDC staff began implementing the new behavior plan on April 7, 2014.  Nicholas was removed from the restraint belt on or about that day.

24.     The restraint belt was used on Nicholas daily for 157 consecutive days before it was finally removed on or about April 7, 2014.

25.     Nicholas experienced physical injury from the mechanical restraint, including a large bruise on his waist area.  Picture of Nicholas with hematoma, Exh. 2.  The belt is routinely cinched so tightly as to press into Nicholas's skin.  On at least one occasion, Nicholas fell while wearing the restraint and was unable to break his fall, causing him to strike his knees and head.

26.     A demand has been made on Defendant Wos and DHHS, and on Defendant Robarge and JIRDC, to cease the use of mechanical restraint on

7

Nicholas as the use fails to comply with federal and State laws and regulations, is outside the bounds of accepted professional judgment and violates his rights under the Fourteenth Amendment to the U.S. Constitution.

<u>CAUSE OF ACTION – 42 U.S.C. § 1983</u>

27.     Plaintiff adopts and restates the allegations set forth in paragraphs 1-26 of this complaint.

28.     A restraint is "[a]ny manual method, physical or mechanical device, material, or equipment that immobilizes or reduces the ability of a patient to move his or her arms, legs, body or head freely."  42 C.F.R. § 482.13(e)(1)(A).

29.     The ambulatory restraint used by JIRDC staff on Plaintiff Nicholas is a mechanical device that immobilizes or reduces the ability of Plaintiff to move his arms, legs, or body freely.

30.     According to the U.S. Supreme Court in <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982), the Due Process clause of the Fourteenth Amendment to the U.S. Constitution guarantees individuals in institutions the right to be free from unreasonable bodily restraint.  Liability for violations of this right is imposed "when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person actually did not base the decision on such a judgment."  <u>Id.</u> at 323.

31.     The relevant professional standards for the use of physical restraint in an

Intermediate Care Facility for Individuals with Developmental Disabilities

(ICF/IID) are found in the Center for Medicare and Medicaid Services' (hereinafter

"CMS") Conditions of Participation for such facilities.  42 C.F.R. §§ 483.400 et

seq.  The CMS standards for ICFs/IID "are accepted by mental retardation [now

referred to as intellectual disability] professionals as minimally adequate."

Thomas S. v. Flaherty, 699 F.Supp. 1178, 1198 (W.D.N.C. 1988).

32.     In an ICF/IID, such as JIRDC,

> The facility may employ physical restraint only (i) As an
> integral part of an individual program plan that is
> intended to lead to less restrictive means of managing
> and eliminating the behavior for which the restraint is
> applied; (ii) As an emergency measure, but only if
> absolutely necessary to protect the client or others from
> injury…

42 C.F.R. § 483.450(d)(1).  The facility may also use physical restraint if

absolutely necessary during a medical or surgical procedure.  Id.

33.     JIRDC staff utilized physical restraint in situations in which Nicholas

was not an imminent danger to the physical safety of himself or others, and in

which Nicholas was not engaged in behaviors that JIRDC sought to eliminate

through the use of restraint.  JIRDC staff forced Nicholas to sleep in mechanical

restraint, at which time Nicholas was not an imminent danger to anyone's physical

9

safety nor was Nicholas engaging in the behaviors targeted for elimination while he was asleep.

34.    Moreover, JIRDC staff continued to impose mechanical restraint on Nicholas for days and weeks at a time, despite the fact that Nicholas was neither an imminent danger to himself or others nor engaging in targeted behaviors at that time.  Such routine and excessive use of restraint violates federal law and is a substantial departure from professional standards regarding the use of restraint. See, e.g., Thomas S., 699 F.Supp. at 1189 ("It is a substantial departure from professional judgment to rely routinely on seclusion and restraint rather than systematic behavioral techniques such as social reinforcement to control aggressive behavior.").  See also Alt v. John Umstead Hospital, 125 N.C.App. 193, 199 (N.C.App. 1997) (restraint is an "extreme measure" to be used as a "last resort").

35.    Under federal regulations, in an ICF/IID, "a client placed in restraint must be… released from the restraint as quickly as possible."  42 C.F.R. § 483.450(d)(4).  Under this standard, JIRDC staff members were required to release Nicholas from restraint as soon as the targeted behavior ended.  JIRDC staff failed to do so; instead, Nicholas remained in restraint.  The failure to release Nicholas from restraint at the earliest possible time is a violation of federal law and is a substantial departure from professional standards regarding the use of restraint.

36.    Under federal regulations, in an ICF/IID, "restraints must be designed and used so as not to cause physical injury to the client and so as to cause the least possible discomfort." 42 C.F.R. § 483.450(d)(5). The waist belt on the mechanical restraint caused physical injury, i.e. a hematoma, to Nicholas. Exh. 2. Nicholas fell while wearing the restraint and, because he was unable to break his fall, hit his head. The continued use of mechanical restraint and the related limitations on the use of his hands continued to present a risk of imminent additional harm to Nicholas. The use of a restraint that causes physical harm and discomfort violates federal law and is a substantial departure from professional standards regarding the use of restraint.

37.    Relevant professional standards are also found in North Carolina regulations. 10A N.C. Admin. Code 28D.0201 et seq.

38.    Under State regulations, "the client shall be removed from seclusion, physical restraint or isolation time-out when the client no longer demonstrates the behavior which precipitated the seclusion, physical restraint or isolation time-out." 10A N.C. Admin. Code 28D.0206. The failure to release Nicholas from restraint at the earliest possible time is a violation of State regulation and is a substantial departure from professional standards regarding the use of restraint.

39.    Under State regulations, prior to the use of restraint to eliminate behaviors in a State-operated ICF/IID, the treatment team must approve the

individual's plan.  10A N.C. Admin. Code 28D.0208.  The patient or guardian

must consent to the use of restraint, and the Human Rights Committee must

approve the plan.  Id.

40.     JIRDC staff incorporated the use of physical restraint into Nicholas's

behavior plan, and applied the restraint as early as November 6, 2013, although the

plan was not reviewed and approved by the Human Rights Committee until

November 18, 2013.  The use of restraint prior to obtaining the required consent

and approval violates State regulations and is a substantial departure from

professional standards regarding the use of restraint.

41.     Under State regulations, restraint "shall never be the sole treatment

modality for the elimination of target behavior."  Id.  "The treatment/habilitation

plan shall include… the accompanying positive treatment or habilitation methods

which shall be at least as strong as the negative aspects of the plan."  Id.  JIRDC

staff failed to incorporate any less restrictive and/or positive interventions into

Nicholas's treatment plan.  Instead, they relied solely on physical restraint to

address the target behaviors.  Such reliance on physical restraint without

incorporating positive and less restrictive treatment methods violates State

regulations and is a substantial departure from professional standards regarding the

use of restraint.

42.     Defendants Wos and Robarge have substantially departed from accepted professional judgment in the use of physical restraint on Plaintiff Nicholas.  In doing so, Defendants Wos and Robarge have violated Plaintiff Nicholas's due process rights pursuant to the Fourteenth Amendment to the U.S. Constitution.

43.     These violations entitle Plaintiff Nicholas to relief under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

<u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

   1.  Enter a declaratory judgment that Defendants' actions violate State and federal law and are a substantial departure from accepted professional judgment;

   2.  Enter a declaratory judgment that Defendants' actions violated Plaintiff's right to be free from unreasonable bodily restraint pursuant to the Fourteenth Amendment to the U.S. Constitution;

   3.  Enter a declaratory judgment that the use of physical restraint by Defendants, on an individual in a healthcare facility, that violates State or federal law is a violation of that individual's right to be free from unreasonable bodily restraint pursuant to the Fourteenth Amendment;

   4.  Enter permanent injunctive relief requiring Defendants and/or their successors, agents, officers, servants, employees and representatives, and all

13

persons acting in concert or participating with them, to cease the use of physical

restraint on Plaintiff in violation of State and federal law;

5. Enter permanent injunctive relief requiring Defendants and/or their

successors, agents, officers, servants, employees and representatives, and all

persons acting in concert or participating with them, to cease the use of physical

restraint on individuals in healthcare facilities in violation of State and federal law;

6. Retain jurisdiction over this action to ensure Defendants' compliance with

the mandates of the Court's Orders;

7. Award the Plaintiff the costs of this action and reasonable attorney's fees

pursuant to 42 U.S.C. § 1988; and

8. Such other, further or different relief as the Court deems equitable and just.

Dated:  April 10, 2014                    Respectfully submitted,

/s/ Kristine L. Sullivan
Kristine L. Sullivan, N.C. Bar No. 35595
kristine.sullivan@disabilityrightsnc.org

/s/ John R. Rittelmeyer
John R. Rittelmeyer, N.C. Bar No. 17204
john.rittelmeyer@disabilityrightsnc.org

*Attorneys for Plaintiff*
DISABILITY RIGHTS NC
2626 Glenwood Avenue, Suite 550
Raleigh, NC  27608
Phone: (919) 856-2195
Fax: (919) 856-2244

## Certificate of Service

The undersigned hereby certifies that on April 10, 2014, I electronically filed the foregoing First Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Olga Vysotskaya
ovysotskaya@ncdoj.gov

Respectfully submitted,

/s/ Kristine L. Sullivan
Kristine L. Sullivan, N.C. Bar No. 35595
kristine.sullivan@disabilityrightsnc.org
*Attorney for Plaintiff*
DISABILITY RIGHTS NC
2626 Glenwood Avenue, Suite 550
Raleigh, NC  27608
Telephone: (919) 856-2195
Fax: (919) 856-2244